#### Jos. Schlitz Brewing Co. v. Charles Blacklay.

ACTION FOR DAMAGES FOR AN INJURY RECEIVED FROM A KICK BY A HORSE OF A VICIOUS AND DANGEROUS CHARACTER.

In an action for damages by a person who has received an injury resulting from a kick by a horse of a vicious and dangerous character, owned by defendant, and the testimony of such person shows that the horse that kicked him was named "Nelly," and the evidence clearly shows that "Nelly" was a horse of a kind and gentle disposition; but from the evidence of defendant's own employees it appears that the horse that kicked the plaintiff, was not "Nelly," but "Pearl," and the evidence without contradiction shows that "Pearl" was of a vicious and dangerous character: *Held*, that a verdict returned by the jury in favor of plaintiff, will not be disturbed, as it is fully sustained by the evidence.

ERROR to the Court of Common Pleas of Lucas county.

KING, J. (orally.)

This is a petition in error to reverse the judgment of the court of common pleas of this county. Blacklay brought suit in that court against The Jos. Schlitz Brewing Company, a corporation organized under the laws of the state of Wisconsin, doing business at Toledo, Ohio, alleging that on or about October 14, 1897, said company owned and kept a horse "which it knew was accustomed to kick mankind and which it well knew was of a fierce and dangerous nature" and that this horse, while the plaintiff was employed as a night watchman for the defendant, got loose, and without any negligence or carelessness on his part—he not having any knowledge of the character of the horse—it kicked him, whereby he suffered serious injury; and he recovered on the trial a verdict of $1,250. This amount the court thought was excessive and required the plaintiff to enter a remitter for $500, or grant a motion for a new trial; plaintiff below agreeing to accept, a remitter was entered and a judgment rendered for $750.

Now, it is asserted that a new trial should have been granted in this case; and the principal reason urged is, that the verdict does not show that the horse was vicious. That is one of the reasons and was the principal one argued. Others will be noticed incidentally. I have not time to go over the evidence. The plaintiff in his testimony swore that in the night time, about twelve o'clock, while he was employed as a watchman at the storehouse of this brewing company, one of the horses got loose from the stable and came into an open area or hallway and ran there; that he went up to the horse to catch it and it wheeled and kicked him in his side. He testified that when he saw the horse, he spoke to it and called it by name, that he called it "Nelly;" and I think in substance he testifies that that was the name of the horse—but that he didn't have much to do about the horses. The other evidence in the case shows that "Nelly" was one of a team of horses which was in the stable, and the other horse of this team was called "Pearl." The defendant accepting the plaintiff's designation of the horse as "Nelly," brought considerable evidence to show that that horse was of a kind disposition, and probably on that question the weight of evidence is with the brewing company—that "Nelly" was a horse of a kind and gentle disposition—and I think it quite likely that that was true; but, unfortunately for the defendant below, that issue does not dispose of the question whether one of the horses belonging to the brewing company was of the character ascribed to it in the petition, and whether it committed this injury. There were two horses used in a team, and the name that the other horse was known by was "Pearl," and there is a great deal of evidence in the record to show that "Pearl" was a horse of a vicious disposition; that it had kicked one or two people and was accustomed to kick and to bite and thresh around generally—was a dangerous horse. On the night in question this man was kicked so that he was practically unconscious, at least was not able to move very much, and while he lay there on the ground somebody who heard him hallooing came into the place where he lay and asked him what was the matter and he said he had been kicked by the horse, which had run back into the barn. The other man ran back and tied the horse, and he says that the horse stood in his stall, which was the second stall from the end of the row of stalls in the stable, and he tied him by getting around by his head through the stall of another horse. Three witnesses, employees of the defendant company, swore that "Nelly's" stall was the end stall and that "Pearl's" stall was the

Schlitz Brewing Co. v. Blacklay.

second one from the end. They ought to know. They testified that they had worked there for months and knew exactly where these horses stood, and if that evidence is to be believed then the horse that kicked the plaintiff below was not "Nelly" but "Pearl," and the evidence without contradiction, shows that that horse was of a vicious and dangerous character, and upon that view of the testimony we think the verdict is fully sustained by the evidence. I might say that there was one at least of the witnesses who swore that "Nelly" was a very dangerous horse, but I think perhaps the weight of the evidence was against that witness' testimony, because generally they swore that "Nelly" was a horse of very kind and gentle disposition.

It is claimed that there was error in the admission of testimony, but we do not find any such error. We think there was no testimony admitted that would have been prejudicial to the plaintiff in error.

It is claimed that the plaintiff below contributed to his injury. But nobody saw this injury inflicted, nobody testified to this occurrance but the plaintiff himself, and from his own statement of the facts we do not think he was negligent. He says he spoke to the horse and called it by name: he supposed it was "Nelly" and he called it "Nelly," and as he reached out to take hold of the halter, which was a short strap which had been broken off, the horse whirled and kicked him. It is said that he did not approach the horse's head, but according to his statement and his story generally, that was clearly the way that he undertook to get at the horse. It was said that he ought to have had knowledge of the character of this horse. The evidence does not support that claim. He had worked in the brewery a few months and had driven one old horse to a single delivery wagon. During that time he took care of that horse, but he had nothing to do with the other horses; his attention was not directed to them except at this particular time. At the time of the injury, they having no work for him as a driver, had permitted him to remain there on some small wages and act as a night watchman, to look around on the outside of the barn and buildings and see that everything was kept straight. He had nothing more to do with the teams than that; he did not clean the horses and did not take care of them in any way except to put down a little hay for them in the morning, and the evidence does not indicate that he knew anything about the team at all except that he had seen them in the barn and seen them hitched to the wagons.

We are not prepared to say that the verdict was excessive; the motion for a new trial so alleges but it does not allege in the language of the statute that it is excessive as appearing to have been given under the influence of passion or prejudice. It may have been a little large without being excessive on the ground that it was given under the influence of passion or prejudice. If the plaintiff's story and that of his doctor is to be believed, the verdict itself was not particularly excessive; but the court believed it to be large and required the plaintiff below to remit $500, leaving the amount of the judgment to stand at $750, and that, in view of all the testimony, we think is not excessive, and therefore the judgment is affirmed.

*Seney & Johnson,* for plaintiff in error.
*Ashton Coldham,* for defendant in error.